UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

DR. RAGHAV HAMPAPUR
VENKATNARAYAN,

        Plaintiff,

        v.

UR MENDOZA JADDOU, Director of
United States Citizenship and
Immigration Services,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:23CV256

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Raghav Hampapur Venkatnarayan, Ph.D. (hereinafter "Plaintiff"), brought this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), to obtain judicial review of a final decision of the United States Citizenship and Immigration Services (hereinafter "USCIS" or "agency"), denying his application for an employment-based immigrant visa as an alien of "extraordinary ability" under 8 U.S.C. § 1153(b)(1)(A). The Parties have filed cross-motions for summary judgment, and the administrative record has been filed with the Court for review. For the reasons discussed below, the Court concludes that the agency reasonably considered the relevant issues and reasonably explained its decision, and Plaintiff has failed to show that the agency's decision was arbitrary and capricious or an abuse of discretion.

I. PROCEDURAL HISTORY

Plaintiff is a native of India who entered the United States on an F1 student visa and earned a Ph.D. in Computer Science from North Carolina State University in 2019. He began work in 2021 as a machine learning engineer for Entefy, Inc. On October 11, 2022, Plaintiff filed an application with the USCIS for an employment-based immigrant visa, seeking to be classified as an alien with extraordinary ability under 8 U.S.C. § 1153(b)(1)(A). (Tr. at 2, 8, 328 [Doc. #13 at 2, 6; Doc. #13-7 at 3].)[1] In support of the application, Plaintiff relied on his "contributions to wireless human activity sensing, ambient light sensing, position tracking for augmented reality and device-free indoor location sensing." (Tr at 346 [Doc. #13-7 at 21].)[2] After the agency sent Plaintiff a request for additional evidence in relation to his application (Tr. at 13-18 [Doc. #13 at 13-18]), Plaintiff filed supplemental supporting documents. The USCIS denied Plaintiff's application on February 21, 2023. (Tr. at 1-6 [Doc. #13 at 1-6].) Plaintiff did not seek internal agency review of the decision, thereby making the February 21,

[1] Defendant filed the administrative record in thirteen separately-paginated documents on ECF [Doc. #13 & Attachs.]. However, both Parties cite to the administrative record as a consistently-paginated whole. The Court will do so as well. Citations to "Tr." followed by page numbers refer to the PDF page numbers of the administrative record [Doc. #13 & Attachs.] when combined into one document.

[2] Specifically, Plaintiff pointed to his research and publications regarding "[m]ulti-user gesture recognition using WiFi" in 2018 and 2019, "[g]esture recognition using ambient light" in 2018 and 2020, "enhancing indoor inertial odometry with WiFi" in 2019, and "[l]everaging WiFi signal polarization to simultaneously track multiple people" in 2020. (Tr at 351-56 [Doc. #13-7 at 26-31.)

2023, denial the agency's final decision for purposes of judicial review. (Tr. at 1 [Doc. #13 at 1].)

## II.     LEGAL STANDARD

### A.     APA Review

Final denials of extraordinary-ability visas are judicially reviewable under the APA. 5 U.S.C. § 704; Amin v. Mayorkas, 24 F.4th 383, 389-90 (5th Cir. 2022). However, judicial review under the APA is narrow and highly deferential. A reviewing court may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> Agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

> Review under this standard is highly deferential, with a presumption in favor of finding the agency action valid.

Appalachian Voices v. U.S. Dep't of Interior, 25 F.4th 259, 269 (4th Cir. 2022) (internal quotations omitted). As noted by the Supreme Court:

> The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained. Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency. A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.

Fed. Commc'ns Comm'n v. Prometheus Radio Project, 592 U.S. 414, 423 (2021). Cross-motions for summary judgment provide the mechanism for undertaking this analysis based on review of the administrative record.

3

B.      Employment-Based Immigrant Visas

The allocation of immigrant visas is statutorily controlled by 8 U.S.C. § 1153.   In

addition to allocating visas based on family ties and a limited nation-of-origin diversity lottery,

8 U.S.C. § 1153(a), (c), the statute also allocates visas based on employment, 8 U.S.C. § 1153(b).

Within the employment-based category of visas, there are various categories and preferences.

The first preference includes aliens with "extraordinary ability," outstanding professors and

researchers, and certain multinational executives and managers, id. § 1153(b)(1), while the

second preferences include aliens who are members of the professions holding advanced

degrees, and aliens of "exceptional ability," id. § 1153(b)(2), and the third preference includes

other skilled workers and professionals, id. § 1153(b)(3).   See Kazarian v. U.S. Citizenship &

Immigr. Servs., 596 F.3d 1115, 1120 (9th Cir. 2010).

In this case, Plaintiff did not apply for a visa as an outstanding researcher, or as

someone with "exceptional ability."   Instead, Plaintiff applied for a first preference visa as an

alien of "extraordinary ability."   An alien with extraordinary ability is one who "has

extraordinary ability in the sciences, arts, education, business, or athletics which has been

demonstrated by sustained national or international acclaim and whose achievements have

been recognized in the field through extensive documentation."   8 U.S.C. § 1153(b)(1)(A)(i).

An applicant who seeks such a visa bears the burden of establishing that he is eligible for the

requested benefit.  8 C.F.R. § 103.2(b)(1).  An applicant who carries this burden may receive a

visa that permits him to live and work in the United States, regardless of whether he has a

4

current employment offer and regardless of whether his employment will have an impact on the domestic labor market. 8 C.F.R. § 204.5(h)(5).[3]

An applicant seeking an extraordinary-ability visa must present evidence that he "has sustained national or international acclaim" and that his "achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). An applicant can meet this evidentiary threshold by either presenting "evidence of a one-time achievement (that is, a major, international recognized award)" such as the Nobel Prize, or by presenting evidence in at least three of ten regulatorily-defined categories. 8 C.F.R. § 204.5(h)(3)(i)-(x); Kazarian, 596 F.3d at 1119; Mishra v. Richardson, No. 1:20-cv-991 (LMB/TCB), 2021 WL 1566071, at *1 (E.D. Va. Apr. 20, 2021). Those ten categories require:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

---

[3] Other forms of employment-based visas may require the applicant to have a job offer from an employer in the United States unless waived in the national interest, and may also require a certification from the Department of Labor that "there are not sufficient workers who are able, willing, qualified[, and] available" to perform the work and that the applicant's employment would "not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. §§ 1153(b)(1)(B)-(C), (b)(2)(A), 1182(a)(5)(A); 8 C.F.R. § 204.5(a)(2), (i)(3)(iv), (j)(5), (k)(1), (k)(4).

(v)      Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi)      Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii)      Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii)      Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix)      Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x)      Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3).

In evaluating applications for extraordinary-ability visas where an applicant has not presented evidence of a major one-time achievement, the USCIS goes through a two-step process. First, it makes a threshold evidentiary determination on whether an applicant has come forward with enough evidence to satisfy three of the ten categories under 8 C.F.R. § 204.5(h)(3). If an applicant cannot ultimately satisfy this evidentiary requirement, the analysis stops and the application is denied. If an applicant has satisfied this evidentiary requirement, the agency then goes on to determine, based on the proffered evidence, whether the applicant "is one of that small percentage who have risen to the very top of the[ir] field of endeavor," 8 C.F.R. § 204.5(h)(2), and in fact "has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(3); Kazarian, 596 F.3d at 1117; accord Mishra, 2021 WL 1566071, at *1.

## III.   DISCUSSION

In the present case, the USCIS found that Plaintiff had not presented evidence that he had received a "major, internationally recognized prize or award." (Tr. at 3 [Doc. #13 at 3].) Therefore, the agency went on to consider whether Plaintiff had "fulfilled at least three of the ten criteria listed in the regulations." (Tr. at 3 [Doc. #13 at 3].) Plaintiff argued that he could fulfill the following three criteria:

> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field; [and]
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media.

8 C.F.R. § 204.5(h)(3)(iv)-(vi).

The agency found that Plaintiff had submitted evidence of two of these criteria: (1) his participation as a judge of the work of others in the same field (Tr. at 3 [Doc. #13 at 3]), which Plaintiff based on his work as a peer-reviewer on "at least 10 reviews for journals and conference proceedings" (Tr. at 344 [Doc. #13-7 at 19]) and (2) his authorship of scholarly articles in the field (Tr. at 5 [Doc. #13 at 5]), which Plaintiff based on his "14 peer-reviewed scientific articles" (Tr. at 358 [Doc. #13-17 at 33]).

However, the agency found that Plaintiff had not presented sufficient evidence of his original scientific contributions of major significance. (Tr. at 3-5 [Doc. #13 at 3-5].) With respect to this criterion, the agency noted that "[t]he plain language of this criterion requires evidence (1) of the Petitioner's contributions related to scientific, scholarly, artistic or business

7

fields, (2) that the Petitioner's contribution is original, and (3) that the Petitioner's original contribution has been of major significance." (Tr. at 3 [Doc. #13 at 3].)

The agency recognized that Plaintiff "worked on projects and conducted research which has been published," and noted that, despite Plaintiff's direct reference to only fourteen publications, the record actually contained "16 sources attributed to" Plaintiff, some of which were "published in major or high-ranking journals." (Tr. at 4 [Doc. #13 at 4].) The agency also noted that these publications had resulted in over 200 citations to Plaintiff's work. (Tr. at 4 [Doc. #13 at 4].) The agency further acknowledged that Plaintiff had submitted "corroborating evidence in the form of opinion letters from experts in the field," "documentation about a patent on which the petitioner is listed as co-author," proof that Plaintiff's work had been "funded by various agencies," and evidence of Plaintiff's "peer-review service to journals." (Tr. at 4-5 [Doc. #13 at 4-5].) However, the agency found that this submitted evidence did not meet the regulatory criterion of showing that Plaintiff's original scientific contributions were of major significance. (Tr. at 5 [Doc. #13 at 5].)

The agency stressed that there was a regulatory distinction between works that were merely "original" and those that were also of "major significance." (Tr. at 3 [Doc. #13 at 3] (citing APWU v. Potter, 343 F.3d 619, 626 (2d Cir. 2003); Silverman v. Eastrich Multiple Inv. Fund, L.P., 51 F. 3d 28, 31 (3d Cir. 1995)).) Thus, evidence of original work would not necessarily also be evidence that the work was of major significance. (Tr. at 3-4 [Doc. #13 at 3-4].) The agency concluded that the evidence reflected that Plaintiff was "a research professional in the field" and had "made original contributions," but "the record does not

establish that the work has had a remarkable impact or influence in the field." (Tr. at 5 [Doc. #13 at 5].)

The agency first considered Plaintiff's publications. With respect to the publications, the agency noted that the publication of Plaintiff's research was evidence of originality, but further found that "the publications cannot be considered influential if the evidence does not show that they have been of major significance or have had a major breakthrough in the field as a whole." (Tr. at 4 [Doc. #13 at 4].) The agency found that the record did not demonstrate that the publications had "provoked a level of commentary or generated a degree of attention that meets the major significance threshold." (Tr. at 4 [Doc. #13 at 4].) Similarly, the agency stated that merely being published in "high-ranking journals," does not in turn necessarily "show an author's influence or the impact of the petitioner's research on the field." (Tr. at 4 [Doc. #13 at 4].)

The agency also considered Plaintiff's evidence of his citation statistics, that is, the number of other articles that cited his articles. However, the agency noted that citation numbers compared to a baseline average—without reference to how many citations were self-citations or citations by co-authors, and without reference to the weight to which any single source relied on Plaintiff's work in its citation—told the agency very little about whether these citations were indicative of a contribution of major significance, and did not provide sufficient context to determine the impact or importance of the work. (Tr. at 4 [Doc. #13 at 4].) Even when reviewing examples of articles that had cited Plaintiff's work, the agency noted that "there is no evidence distinguishing the petitioner's work from all the other works cited in the articles to show the major significance of the petitioner's work." (Tr. at 4 [Doc. #13 at 4].)

9

Thus, a mere collection of many citations did not, without further explanation, show that Plaintiff's work was of major significance, and the evidence presented did not reflect that the publications provoked "widespread commentary" or received notice for others "at a level consistent with contributions of major significance in the field." (Tr. at 4 [Doc. #13 at 4].)

The agency next considered Plaintiff's supporting letters from "experts in the field including Dr. S. Munir, Dr. S Yun, and Dr. E. Bulut." (Tr. at 4 [Doc. #13 at 4].) Even before making its decision, the agency alerted Plaintiff in a Request for Evidence that:

> The submitted expert testimonial letters describe the petitioner's work in technical details and provide insight into some of the petitioner's projects. Though the letters compliment the various aspects of the petitioner's work, they do not sufficiently establish that the petitioner made contributions of major significance in the field. Please note that scientific contributions should have a major significance, or major breakthrough in the field of endeavor as a whole. Letters by experts are helpful; however, the major significance of the Petitioner's contribution must be demonstrated by pre-existing, independent, and objective evidence. USCIS may, in its discretion, use such letters as advisory opinions submitted by expert witnesses. However, USCIS is ultimately responsible for making the final determination of the alien's eligibility. See Matter of Caron International, 19 I&N Dec. 791, 795 (Comm. 1988).

(Tr. at 16-17 [Doc. #13 at 16-17].) Plaintiff did not submit any new expert letters in response to this Request for Evidence, and the agency went on to discuss the originally-submitted letters in its ultimate decision.

The agency found, among other things, that the letters described Plaintiff's "work in technical details and provide[d] additional insight into some of the petitioner's projects and the field." (Tr. at 4-5 [Doc. #13 at 4-5].) Nevertheless, the agency found that, while such letters are helpful in explaining the record evidence, the major significance of an applicant's work "must be demonstrated by pre-existing, independent, and objective evidence." (Tr. at 5 [Doc. #13 at 5].) The letters, the agency found, did little more than "state that the authors

10

cited the petitioner's work in their own research" or "reference the petitioner's number of citations and/or peer-review services to journals in the field." (Tr. at 5 [Doc. #13 at 5].) The agency then referenced its "discuss[ion] above" to explain why these references to citations and peer-reviewed work did not show that Plaintiff's contributions had been of major significance to the field. (Tr. at 5 [Doc. #13 at 5].)

With regard to Plaintiff's co-authored patent, the agency recognized that the patent was "indicative of the originality of the work," consistent with the conclusion that Plaintiff had established originality. However, the agency found that there was no other support in the record to "establish how the patented work has impacted or been of major significance to the field as a whole." (Tr. at 5 [Doc. #13 at 5].) Thus, because there was no evidence that the patent had "resulted in a breakthrough" or "impacted the field in major ways," it was not evidence that Plaintiff's contributions were of major significance in the field. (Tr. at 5 [Doc. #13 at 5].)[4]

Similarly, the agency found that "receiving funding to conduct research" was not itself evidence that the research had resulted in a "contribution of major significance" because funding, while indicative of the importance of the work, was nevertheless common in the field. (Tr. at 5 [Doc. #13 at 5].) The agency concluded that the evidence of funding could show that the research was original, but "does not establish the impact of the research in the field." (Tr. at 5 [Doc. #13 at 5].)

---

[4] The Patent itself is for "Accurate Localization of an Object by Network Device." (Tr. at 452 [Doc. #13-9 at 27].) The Applicant is Hewlett Packard Enterprise Development LP. Plaintiff is listed as one of the four inventors, and the lead inventor is Dr. Yun, who wrote one of Plaintiff's letters, and who noted in his letter that he was Plaintiff's supervisor when Plaintiff was an intern at Hewlett Packard Enterprise. (Tr. at 368 [Doc. #13-7 at 43].)

Finally, while acknowledging that Plaintiff had shown that he had served as a peer reviewer and had presented evidence about the requirements for being selected as a peer reviewer, the agency rejected any argument that simply being a peer reviewer amounted to having "a significant impact or influence on the field as a whole." (Tr. at 5 [Doc. #13 at 5].)

Based on these findings, the agency denied Plaintiff's application at step one of the regulatory analysis, without going on to consider the merits of Plaintiff's application at step two. (Tr. at 5-6 [Doc. #13 at 5-6].) The agency noted that to satisfy the regulatory criteria, "petitioners must establish that not only have they made original contributions, but also that the contributions have been of major significance in the field." (Tr. at 5 [Doc. #13 at 5].) The agency concluded that while Plaintiff had made original contributions, "[u]pon review of all the evidence in the record," the evidence did not establish that the original scientific contributions were of major significance in the field, and concluded that Plaintiff had not satisfied the requirements for establishing "extraordinary ability." (Tr at 5 [Doc. #13 at 5].)[5]

---

[5] As noted above, "extraordinary ability" is distinct from "exceptional ability," which receives second preference. Compare 8 U.S.C. § 1153(b)(1)(A) (emphasis added), with id. § 1153(b)(2) (emphasis added).

To qualify for the "exceptional ability" visa, a petitioner must make a lesser showing of ability, and need only show three of the following:

(A) An official academic record showing that the alien has a degree, diploma, certificate, or similar award from a college, university, school, or other institution of learning relating to the area of exceptional ability;

(B) Evidence in the form of letter(s) from current or former employer(s) showing that the alien has at least ten years of full-time experience in the occupation for which he or she is being sought;

(C) A license to practice the profession or certification for a particular profession or occupation;

(D) Evidence that the alien has commanded a salary, or other remuneration for services, which demonstrates exceptional ability;

(E) Evidence of membership in professional associations; or

(F) Evidence of recognition for achievements and significant contributions to the industry or field by peers, governmental entities, or professional or business organizations.

8 C.F.R. § 204.5(k)(3)(ii).

A.    <u>Consideration of the Evidence</u>

Because the agency found that Plaintiff had established two of the three regulatory categories (Tr. at 3, 5 [Doc. #13 at 3, 5]), the Parties disagree over one decision only: the agency's determination that Plaintiff failed to present sufficient evidence of his original scientific, scholarly, or business-related contributions of major significance in the field (Tr. at 3-5 [Doc. #13 at 3-5]; Pl.'s Mem. [Doc. #12] at 9-10; Def.'s Br. [Doc. #15] at 11). Plaintiff first argues that the USCIS "ignored, misapprehended, and overlooked," Plaintiff's evidence of original contributions of major significance. (Pl.'s Mem. at 11 (capitalization omitted).) In particular, Plaintiff argues that the agency (1) arbitrarily discounted the letters from the experts without considering their substance (Pl.'s Mem. at 11-16), (2) failed to consider the record evidence in the aggregate (Pl.'s Mem. at 17-18), and (3) did not give proper weight to Plaintiff's patent (Pl.'s Mem. at 18).

i.    <u>Expert letters</u>

In support of his application, Plaintiff submitted expert opinion letters from Doctors Sangki Yun (Tr. at 368-69 [Doc. #13-7 at 43-44]), Dong Ma (Tr. at 372-74 [Doc. #13-7 at 47-49]), Sirajum Munir (Tr. at 377-79 [Doc. #13-8 at 2-4]), Dimitrios Koutsonikolas (Tr. at 382-84 [Doc. #13-8 at 7-9]), and Eyuphan Bulut (Tr. at 387-89 [Doc. #13-8 at 12-14]). While not

---

To qualify for an "exceptional ability" visa, however, the alien must also provide evidence that his services are sought by a United States employer. <u>Id.</u> The "extraordinary ability" visa thus has considerable advantages. Unlike the "exceptional ability" visa petition, the "extraordinary ability" petition is not dependent on an actual offer for employment in the United States, and is exempt from the time-consuming labor certification process, which requires that employers first test the marketplace for existing qualified domestic workers. <u>Compare id.</u> § 204.5(h)(5), <u>with id.</u> § 204.5(k)(4).

<u>Kazarian</u>, 596 F.3d at 1117.

form letters, these exhibits did nevertheless follow a basic pattern that was common to them all. In essence, the letters all describe:

(1) the publication of Plaintiff's articles in and his service to peer-reviewed journals, the standards for such journals, and citations made to those articles;

(2) Plaintiff's credentials and work history;

(3) the mechanics and potential applications of Plaintiff's research to certain markets;

(4) the fact that Plaintiff has a patent;

(5) the fact that Plaintiff's work has received institutional and research funding and the standards for receiving such funding; and

(6) the letter writers' credentials.[6]

As the agency correctly noted, other than the credentials of the letter writers, this information, while condensed and highlighted in the letters, was contained in the record and had been addressed more fully by the agency elsewhere in its opinion. (Tr. at 3-5 [Doc. #13 at 3-5].) In analyzing the significance of the letters, the agency cross-referenced its previous analysis of the very evidence the letters referenced in turn, noting "[t]he evidence, as discussed above, is not sufficient to establish that the petitioner's research findings have remarkably impacted or influenced the field as a whole." (Tr. at 5 [Doc. #13 at 5].) This evaluation is not arbitrary and capricious, and is reasonably supported by the record.

For instance, the letters generally make reference to the high number of citations to Plaintiff's work, but in particular highlight only a handful of the authors who had made such

---

[6] With respect to the letter writers' credentials, Dr. Yun is a software engineer at Meta, Dr. Ma is an assistant professor at the Singapore Management University, Dr. Munir is a Senior Research Scientist at Bosch Research and Technology Center, Dr. Koutsonikolas is an associate professor at Northeastern University; and Dr. Bulut is an associate professor at Virginia Commonwealth University.

citations: Gao et al. (Tr. at 369 [Doc. #13-7 at 44]); Li et al. (Tr. at 383 [Doc. #13-8 at 8]); Ma (Tr. at 373 [Doc. #13-7 at 48]); Tian et al. (Tr. at 388 [Doc. #13-8 at 13]); Uchiyama et al. (Tr. at 388 [Doc. #13-8 at 13]); and Zhang et al. (Tr. at 373, 377, 383 [Doc. #13-7 at 48; Doc #13-8 at 2, 8]). All of these articles were included as exhibits in Plaintiff's application as examples of "[n]otable citations of Dr. Hampapur Venkatnarayan's work." (Tr. at 480-524 [Doc. #13-10 at 5-25; Doc. #13-11 at 1-24].) In reviewing these articles directly, the agency found that "[w]hile the petitioner submitted copies of articles . . . that cited the petitioner's works and claimed that some researchers have used the petitioner's works in 'notable ways', there is no evidence distinguishing the petitioner's work from all the other works cited in the articles to show the major significance of the petitioner's work." (Tr. at 4 [Doc. #13 at 4].) The agency found that "[t]he evidence in the record is insufficient to demonstrate the reasons the citations are notable." (Tr. at 4 [Doc. #13 at 4].) That determination is reasonably supported by the record, as review of the articles and the record fails to indicate how the citations are notable or how they reflect a contribution of major significance.[7] Similarly, the agency noted that "the

---

[7] Plaintiff's briefing contends that the agency failed to consider the substance of the letters, citing to portions of the letters regarding Plaintiff's "multiple original contributions." (Pl.'s Mem. at 15-16; Pl.'s Resp. [Doc. #16] at 5-6.) Indeed, the letters themselves are replete with assertions of the originality of Plaintiff's contributions, noting Plaintiff's "new system," "new technology," "discoveries," "novel technique," and "novel system." (Tr. at 368-89 [Doc. #13-7 at 43-50].) However, the agency accepted Plaintiff's evidence that he had made <u>original</u> contributions. The agency nevertheless concluded that Plaintiff has not established that these contributions were of <u>major significance</u>. The letters noted that Plaintiff's contributions were "valuable," "helpful," and "significant" in increasing accuracy and improving performance of other technologies. (Tr. at 368-89 [Doc. #13-7 at 43-50; Doc. #13-8 at 1-14].) Plaintiff contends that these letters are sufficient to show that Plaintiff's contributions were "materially significant" or "significantly changed the field." (Pl. Resp. at 6.) However, the agency could reasonably conclude that Plaintiff's contributions, even if significant, were not sufficient to show <u>major</u> significance where "the record does not establish that the work has had a remarkable impact or influence in the field." (Tr. at 5 [Doc. #13 at 5].) Moreover, the agency found that the letters simply relied on other evidence already considered in the record, including publications, citations, and funding, without any other pre-existing or independent documentation (Tr. at 5 [Doc. #13 at 5]), and the agency addressed all of the record evidence at length, as discussed above.

15

high-ranking status of a journal does not show an author's influence or the impact of the petitioner's research on the field neither does it establish that every article published in a highly ranked journal automatically indicates a contribution of major significance." (Tr. at 4 [Doc. #13 at 4].)

The agency's determination was well within its discretion. As the Ninth Circuit similarly found in Kazarian—a decision upon which both Parties rely and which forms the basis of the USCIS's current two-stage analysis of extraordinary-ability visa applications (Pl.'s Mem. at 2, 16, 19; Def.'s Br. at 7-8 & n.3)—an agency need not defer to statements presented in expert letters:

> Pursuant to 8 C.F.R. § 204.5(h)(3)(v), [the applicant] submitted letters from physics professors attesting to his contributions in the field. The [agency] found that his contributions were not major, and thus did not meet the regulatory definition of evidence. The [agency's] analysis here is consistent with the relevant regulatory language, and the [agency's] determination that [the applicant] did not submit material that met the regulatory definition of evidence set forth at 8 C.F.R. § 204.5(h)(3)(v) is neither arbitrary, capricious, nor an abuse of discretion.

Kazarian, 596 F.3d at 1122. The Court makes a similar finding here, and the agency's similar decision is not arbitrary and capricious.

Other than repeated references to the same articles, citation statistics, journal rankings, and publication criteria as appeared elsewhere in the record, the letters do not address how Plaintiff's publication history is distinguishable from anyone else in the field, let alone show that his publication history is indicative of being of major significance. Thus, when the agency found that "generally, citations to a given article can serve as an indication that the field has taken interest in a petitioner's work" without being sufficient to establish that the work has

16

been of major significance (Tr. at 4 [Doc. #13 at 4]), it applied the same analysis to the recitation of those citations in the letters (Tr. at 5 [Doc. #13 at 5]).

The same is true for each category of information re-raised in the letters, which the agency addressed separately:

- "In general, citations can confirm that the field has taken interest in a researcher's work" but "a citation number or ranking does not provide sufficient context to determine the impact or importance of a given researcher's work in the field" (Tr. at 4 [Doc. #13 at 4]; see also Tr. at 42-43, 45-76, 148-52, 459-68, 470-79 [Doc. #13-1 at 17-18, 20-50; Doc. #13-2 at 1; Doc. #13-3 at 23-27; Doc. #13-9 at 34-43; Doc. #13-9 at 45-50; Doc. #13-10 at 1-4] (Plaintiff's citation statistics));

- "The petitioner did not submit evidence to demonstrate that the prestigious status of a journal transfers to whoever publishes in the journal" (Tr. at 4 [Doc. #13 at 4]; see also Tr. at 112-13, 456-57, 528-32 [Doc. #13-2 at 37-38; Doc. #13-9 at 21-32; Doc. #13-12 at 3-7] (journal rankings));

- "Though the petitioner claims that his peer-review service to journals is evidence of the major significance of his work, the petitioner did not submit evidence to support the claim" beyond mere "evidence of the criteria for selecting reviewers and editors" (Tr. at 5 [Doc. #13 at 5]; see also Tr. at 526-33 [Doc. #13-12 at 1-8] (peer review rankings and meaning of peer review));

- "The record shows that the Petitioner has worked on projects and conducted research which has been published" but the "submitted evidence does not demonstrate that the petitioner's publications have provoked a level of commentary or generated a degree of attention that meets the major significance threshold" (Tr. at 4 [Doc. #13 at 4]; see also Tr. at 392-97, 399, 401 [Doc. #13-8 at 17-22, 24, 26] (Plaintiff's résumé, diploma, and employment letter reflecting his credentials and work history); Tr. at 285-89 [Doc. #13-6 at 10-14] (Plaintiff's personal statement detailing the mechanics and applications of his research));

- "The record contains documentations about a patent" which "is indicative of the originality of the work," but "does not establish how the patented work has impacted or been of major significance to the field as a whole" (Tr. at 5 [Doc. #13 at 5]; see also Tr. at 452-54 [Doc. #13-9 at 27-29] (patent information)); and

- "The petitioner submitted information about publications which mention support from various agencies or organizations" and "[s]ome of the letters of support reference the petitioner's funding," but "receiving funding to conduct research is not a contribution of major significance" (Tr. at 5 [Doc. #13 at 5]; see also Tr. at 165, 535-41 [Doc. #13-3 at 40; Doc. #13-12 at 10-16] (evidence of funding)).

Based on this analysis, Plaintiff's argument that the agency "never even considered the substance of the letters in its decision" (Pl.'s Mem. at 16), is unfounded.[8] While Plaintiff may disagree with the determination the agency made based on the letters, the record nevertheless reflects that the agency considered the letters and, as noted above, addressed the arguments raised therein, whether directly or through cross-reference to its earlier analysis.

      ii.   <u>Failure to consider the evidence in the aggregate and miscitation of case law</u>

Plaintiff next faults the agency for allegedly not properly considering the record evidence and for misciting case law in making its final decision. (Pl.'s Mem. at 17-18.) However, as noted above, the agency evaluated each category of evidence put forward and found that none established that Plaintiff had made a contribution of major significance to the field. In response, Plaintiff argues that it was error to not consider the evidence in the aggregate. However, it is not clear how the accumulation of multiple pieces of evidence not

---

[8] In making the argument that it was "a fatal error" for the agency to entirely fail to consider the substance of the letters (Pl.'s Mem. at 16), Plaintiff relies on <u>Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Automobile Insurance Co.</u>, 463 U.S. 29, 43 (1983). However, <u>Motor Vehicle Manufacturers Ass'n</u> was not an immigrant visa case, nor did it deal with the analysis of expert letters. Rather, the cited portion of the decision stands for little more than the proposition that an agency's rulemaking authority is exercised in an arbitrary and capricious manner if the agency "entirely failed to consider an important aspect of the problem" which the rule was intended to address. <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 42-43. The Court notes that Plaintiff's case does not arise out of the USCIS's rule-making authority, but rather from an administrative decision on his visa application. In any event, as noted above, the agency did not "entirely fail[ ] to consider" the expert letters but addressed them directly and reasonably summarized and analyzed the information contained therein.

showing a contribution of major significance—all related and focused primarily on the publication of and citations to Plaintiff's scholarly work—could collectively show a contribution of major significance. In any event, the agency specifically noted that it had considered all of the evidence and nevertheless rejected Plaintiff's application: "Upon review of all the evidence in the record, it is concluded that the submitted evidence does not establish that the beneficiary's original scientific contributions ha[ve] been of major significance in the field." (Tr. at 5 [Doc. #13 at 5].) Thus, there is no support for a finding that the agency failed to consider the evidence before it, whether individually or collectively.

Relatedly, Plaintiff argues that the agency misapplied case law in determining that an applicant had to present evidence of a contribution that was not just original, but both original and, separately, of major significance. (Pl.'s Mem. at 17.) In explaining that the "term 'original' and the phrase 'major significance' are not superfluous" and thus indicate two different elements of what an applicant must show, the agency relied on Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28 (3d Cir. 1995), and APWU v. Potter, 343 F.3d 619 (2d Cir. 2003), which had also relied on Silverman. (Tr. at 3 [Doc. #13 at 3].) It is apparent from the decision that the agency merely relied on these cases for the basic interpretive purpose of establishing that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant," regardless of the fact that the cases did not specifically deal with immigrant visas. See Silverman, 51 F.3d at 31 (internal quotation omitted); accord Potter, 343 F.3d at 626.[9]

---

[9] Moreover, even if, for the sake of argument, the agency's citations to Silverman and Potter were incorrect or inapposite, Plaintiff, even now, does not argue that the basic premise for which the agency cited those cases was incorrect. Plaintiff accepts the agency's regulatory interpretation that an applicant must present evidence

iii.    The patent

Plaintiff also alleges that the agency failed to give proper weight to the evidence of

Plaintiff's patent in determining whether his work has been of major significance in his field.

Plaintiff apparently argues that because a patent must be for work that is both novel and useful,

it is therefore necessarily evidence of both that work's originality and its major significance.

(See Pl.'s Mem. at 18.)  The agency disagreed and noted that while a patent is indicative that a

work was original, not every patent necessarily indicates a breakthrough of major significance.

As the agency concluded at length:

> The record contains documentation about a patent on which the petitioner is
> listed as co-author.  The patent information is indicative of the originality of the
> work.  The record does not establish how the patented work has impacted or
> been of major significance to the field as a whole.  The petitioner is required to
> demonstrate through independent and objective evidence that not only ha[s]
> the patented work been licensed, but also that the contributions have led to a
> breakthrough or have been of major significance in the field.  Without evidence
> that a patented or licensed work has resulted in a breakthrough or has impacted
> the field in major ways, the record is insufficient to demonstrate the "major
> significance[]" [o]f the contribution.

(Tr. at 5 [Doc. #13 at 5].)  This conclusion was reasonably explained and reasonably supported

by the record.

Even if Plaintiff is correct that every patent indicates that it is both novel and useful

(see Pl.'s Mem. at 18), and even if Plaintiff's work were otherwise shown to be novel and

useful—something the agency never contested (see Tr. at 3-5 [Doc. #13 at 3-5])—this would

not change the fact that "useful" and "of major significance" are by no means one and the

---

of originality and evidence of having had a major impact on the field.  (See Pl.'s Mem. at 12 ("[T]he plain
language establishes that an individual must demonstrate two things: (1) original scientific . . . contributions
that are, (2) of major significance."").)  Therefore, to the extent Silverman and Potter do not directly support the
agency's interpretive proposition, any such error was harmless because Plaintiff concedes the proposition.

same, as the agency essentially noted (Tr. at 5 [Doc. #13 at 5]). Thus, Plaintiff fails to establish any error in the agency's consideration of the patent.[10]

B.    USCIS's Policy Manual

Plaintiff next argues that the agency's decision was not in accordance with its own policy manual, which states that citation and publication history "may be probative of the significance of the person's contributions." (Pl.'s Mem. at 18-19.) However, Plaintiff also concedes that the USCIS policy manual "does not remove [the agency's] discretion in making adjudicatory decisions." (Pl.'s Mem. at 18.) The fact that the agency could consider such evidence—as the agency did here (Tr. at 3-5 [Doc. #13 at 3-5])—and that this evidence <u>may</u> be probative of an applicant's contributions of major significance, in no way demonstrates that the manual required the agency to discard its discretion and move on to step two to consider whether to grant Plaintiff an extraordinary-ability visa. As noted above, the agency went through each category of evidence Plaintiff submitted and analyzed it to determine whether Plaintiff met his evidentiary burden. Just because, in certain circumstances, the policy manual permits the agency to find major significance based on citations and publication history does not mean merely submitting these types of evidence automatically establishes that an

---

[10] In support of his argument for reversal, Plaintiff relies on a decision from the Northern District of California which found, among other things, that the agency essentially misstated the standard for receiving a patent in finding that it was not evidence of a breakthrough of major significance. (Pl.'s Mem. at 18.) <u>Zizi v. Cuccinelli</u>, No. 20-cv-07856-SVK, 2021 WL 2826713, at *4 (N.D. Cal. July 7, 2021). However, unlike in <u>Zizi</u>, the Court sees no indication in Plaintiff's case that the agency misapprehended the legal requirements for a patent, or otherwise erroneously assumed that a patented invention is not also useful. As noted above, the agency merely stated that in addition to being patented, an invention would also have to be of major significance. <u>See</u> 8 C.F.R. § 204.5(h)(3)(v). Plaintiff has pointed to no specific part of the record to raise doubt that the agency was "undoubtedly correct that not all patents represent a contribution of major significance." <u>See</u> <u>Zizi</u>, 2021 WL 2826713 at *4.

applicant has shown a contribution of major significance. Thus, the agency's decision in this case was in accordance with the policy manual.

C.    Distinction Between Evidentiary Step and Merits Step

Finally, Plaintiff argues that, in finding that Plaintiff had not presented sufficient evidence of his original contributions of major significance, the agency actually, and improperly, considered the merits of Plaintiff's petition and found, in substance, that he had not presented sufficient evidence of his extraordinary ability. (Pl.'s Mem. at 20-21.)

However, the agency was clear in its decision that it did not, and would not, consider the merits of Plaintiff's claim of extraordinary ability:

> Since the petitioner has not established by a preponderance of the evidence that the beneficiary meets at least three of the antecedent evidentiary prongs, USCIS will not conduct a final merits determination to determine whether the beneficiary has reached a level of expertise indicating that the beneficiary is one of that small percentage who have risen to the top of the field of endeavor, and whether the beneficiary has sustained acclaim.

(Tr. at 6 [Doc. #13 at 6].) This conclusion is supported by the fact that the agency analyzed Plaintiff's evidence solely under the terms of 8 C.F.R. § 204.5(h)(3) and focused on whether the Plaintiff's evidence showed "contributions of major significance in the field." (Tr. at 3-5 [Doc. #13 at 3-5].) Therefore, any argument that the agency conflated the evidentiary and merits standards is unsupported by—and in fact refuted by—the record.

To the extent Plaintiff argues that the record clearly establishes that he met his evidentiary burden and therefore the only possible basis for rejecting his application would have been because the agency believed he failed or would fail on the merits (see Pl.'s Mem. at 21), this contention is merely a repackaging of his argument that the agency erred in finding he had not met his evidentiary burden. As discussed at length above, the agency set out at

22

length its analysis in concluding that Plaintiff had failed to meet his evidentiary burden. The determination was reasonably explained, the agency's reasoning is discernible from the decision, the agency did not fail to consider any evidence, and the determination is reasonably supported by the record. Ultimately, the decision of the agency was not arbitrary and capricious or an abuse of discretion.

IV.    CONCLUSION

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Summary Judgment [Doc. #14] be GRANTED, and Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

This, the 30th day of August, 2024.

Joi Elizabeth Peake
United States Magistrate Judge